**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

| | |
|---|---|
| **JESSICA MILLER, also known as Jane Doe** | **PLAINTIFF** |
| **v.** | **CAUSE NO. 2:25CV137-LG-BWR** |
| **JOSE AGUIRRE, ET AL.** | **DEFENDANTS** |

**ORDER CONCERNING DEFENDANTS' RULE 12(b)(6) MOTIONS TO DISMISS**

Plaintiff claims that Dr. Jose Aguirre assaulted her during the time that he served as her supervisor at Merit Health Wesley's hospital in Hattiesburg, Mississippi. She claims that all the other defendants—CHS/Community Health Systems, Inc. ("CHS"); CHSPSC, LLC ("CHSPSC"); Wesley Health System LLC ("Wesley Health"); Wesley Physician Services, LLC ("Wesley Physician"); Hattiesburg HB Medical Services ("HBMS"); QHG of Hattiesburg ("QHG Hattiesburg"); QHG of Forrest County, Inc. ("QHG Forrest"); and John Does 1–10—jointly employed both Dr. Aguirre and Plaintiff at the time of the events that led to this lawsuit. Currently before the Court are CHSPSC's [18] Motion to Dismiss; QHG Forrest's [20] Motion to Dismiss; CHS's [22] Motion to Dismiss; Wesley Physician's [24] Motion to Dismiss; QHG Hattiesburg's [26 ] Motion to Dismiss; Wesley Health's [28] Motion to Dismiss; and Dr. Aguirre's [43] Motion to Dismiss Counts II and IX of the Amended Complaint.[1] The parties have fully briefed the

[1] With the exception of Dr. Aguirre, the Court will collectively refer to the defendants seeking dismissal as "the Merit Health Movants." Defendant HBMS

Motions. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that Dr. Aguirre's [43] Motion to Dismiss Counts II and IX of the Amended Complaint should be granted. The Court further finds that the Merit Health Movants' Motions to Dismiss should be granted in part and denied in part.

**BACKGROUND**

In her [7] Amended Complaint, Plaintiff claims that CHS, CHSPSC, Wesley Health, Wesley Physician, HBMS, QHG Hattiesburg, and QHG Forrest do business as "Merit Health Wesley," which operates a hospital in Hattiesburg, Mississippi. She alleges these defendants have "joint and combined roles in the operation of Merit Health Wesley and the hiring, employment, training, management, and supervision of medical providers working at the [h]ospital." Am. Compl. [7] at 6.

Plaintiff states that Merit Health Wesley hired her to work as a Nurse Practitioner on the hospital's night shift, and she signed an Advanced Practice Clinician Employment Agreement with Wesley Physician on January 23, 2025. She claims that "Merit Health representatives" told her that she could transfer to the day shift if a position became available. *Id.* In May 2025, "Merit Health" hired Dr. Aguirre for the position of hospitalist medical director, so he became Plaintiff's supervisor. *Id.* at 7.

---

has not filed a motion to dismiss, so this Memorandum Opinion and Order does not address Plaintiff's claims against that defendant.

"On May 22, 2025, Plaintiff signed a new Advanced Practice Clinician Employment Agreement with Merit Health, and [HBMS] was listed as the named employer." *Id.* at 8. That same day, Dr. Aguirre invited Plaintiff to "discuss work matters" at his hotel room, which had been supplied by Merit Health. *Id.* She claims that Dr. Aguirre sexually assaulted her when she attempted to leave his hotel room in order to start her shift at the hospital. She alleges that he threatened her and ordered her to return to his room during her shift if she was not busy. She claims that she returned to his room, and he sexually assaulted her again.

On June 2, 2025, she told Human Resources that Dr. Aguirre assaulted her, and she also filed a police report. Plaintiff asked Human Resources to transfer her to the day shift "to ensure her safety" because "she would often be alone" during the night shift. *Id.* at 10. Merit Health denied her request for transfer to the day shift. It also concluded that the interactions between Plaintiff and Dr. Aguirre were consensual. Plaintiff considers Merit Health's response to her allegations, as well as its denial of her request for a transfer to the day shift, a constructive discharge.

She alleges that the following defendants "constitute a single integrated enterprise and joint employers of Dr. Aguirre and [Plaintiff] through interrelation of operations; centralized control of labor relations; common management; and common ownership and financial control": CHS, CHSPSC, Wesley Health, Wesley Physician, HBMS, QHG Hattiesburg, and QHG Forrest. *Id.* at 11. She attempts to assert the following claims:

- "Count I - Alter Ego/Co-Principals (Against Merit Health)";

- "Count II - Respondeat Superior";
- "Count III - Title VII Claims: Sexual Harassment and Discrimination, Hostile Work Environment, Quid Pro Quo Harassment, Sex Discrimination, Retaliation, Constructive Discharge, and Failure to Accommodate (Against Merit Health)";
- "Count IV – Negligent and/or Grossly Negligent Hiring, Training, Retention and Supervision (Against Merit Health)";
- "Count V – Assault and Battery / Sexual Assault and Battery (Against Dr. Aguirre)";
- "Count VI – Intentional Infliction of Emotional Distress (Against Dr. Aguirre)";
- "Count VII – Negligent and/or Intentional Infliction of Emotional Distress (Against Merit Health)";
- "Count VIII - Negligent and/or Intentional Infliction of Emotional Distress (All Defendants)"; and
- "Count IX – Attorney's Fees and Costs of Litigation."

*Id.* at 11–20.

The defendant HBMS filed an [17] Answer to Plaintiff's Amended Complaint in which it admits that it "employed Dr. Aguirre and Plaintiff at certain times that may be relevant to the Complaint." HBMS Ans. [17] at 4. The Merit Health Movants have filed similar Motions to Dismiss under Rule 12(b)(6).[2] Dr. Aguirre has filed a [43] Motion to Dismiss Plaintiff's alleged claims for "Respondeat Superior" and "Attorney's Fees and Costs of Litigation."

[2] Since the parties' submissions related to the Merit Health Defendants' Motions to Dismiss are very similar, the Court will only quote filings related to CHSPSC's [18] Motion to Dismiss, when appropriate.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the claimant." *Herbert v. St. James Par. Sch. Bd.*, 177 F.4th 630, 636 (5th Cir. 2026). "Legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement are not presumed to be true." *Id.* (citation modified).

The Court is always mindful of that when considering a motion to dismiss under Rule 12(b)(6), the Court must assess the legal feasibility of the complaint, not weigh the evidence that might be offered in its support. The Court's consideration is limited to "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022).

### I. RULE 8 PLEADING STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Complaints that do not meet this requirement are commonly referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313,

1320 (11th Cir. 2015). One example of a shotgun pleading is a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Id.* at 1323.

Defendants argue that "Plaintiff's allegations represent a mere shotgun pleading that fails to distinguish between the actions of named defendants." CHSPSC's Mem. [19] at 9. However, a plaintiff can attribute discrete actions to all or multiple defendants when the plaintiff provides a basis for grouping the defendants together. *McNeal v. Markum Enters., LLC*, No. 6:16-CV-1118-RWS-KNM, 2017 WL 4249402, at *7 (E.D. Tex. Aug. 29, 2017), *report and recommendation adopted*, No. 6:16-CV-01118-RWS, 2017 WL 4238163 (E.D. Tex. Sept. 25, 2017) (noting that a plaintiff can "plead allegations against [multiple] [d]efendants in a collective fashion[] [if] he first alleges facts supporting a relationship between the . . . [d]efendants").

Here, Plaintiff states that she grouped most of the defendants together "given their joint and combined roles in the operation of Merit Health Wesley and the hiring, employment, training, management, and supervision of medical providers working at the hospital." Am. Compl. [7] at 6. As a result, the Merit Health Movants' argument that the Amended Complaint is a shotgun pleading is not persuasive.

## II. TITLE VII

### A. FAILURE TO EXHAUST

Generally, a plaintiff cannot sue a party under Title VII unless she first named that party in a charge filed with the Equal Employment Opportunity Commission ("EEOC"). *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014), *as revised* (Sep. 18, 2014). "When applying that general rule, however, courts liberally construe Title VII's naming requirement so as to not frustrate claimants with needless procedural roadblocks." *Id.* In addition, the Fifth Circuit has adopted the identity of interests exception and the actual notice exception to this general rule. *Id.* at 481–84. The identity-of-interests test includes the following four factors:

> (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 482–83 (citation modified).

Failure to exhaust is an affirmative defense. *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 307 (5th Cir. 2018), *aff'd sub nom. Fort Bend Cnty. v. Davis*, 587 U.S. 541 (2019). "When a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate." *Miller v. BAC Home Loans*

*Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. 2013). "An affirmative defense places the burden of proof on the party pleading it." *Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 117 F.4th 628, 643 (5th Cir. 2024) (citation modified).

All of the Merit Health Movants except CHS argue that Plaintiff did not exhaust her administrative remedies because, "[i]n her original EEOC charge, Plaintiff identified only 'Merit Health Wesley Hospital (CHS Corporation).'" Def.'s Mem. [19] at 10. These Movants mention the identity-of-interest exception to exhaustion but do not analyze the factors applicable to that exception. They assert, "Plaintiff fails to plausibly allege [that CHSPSC and Wesley Physician were] her single or joint employer[s]." Defs.' Mems. [19], [25] at 11. They also claim that "Plaintiff makes no factual allegations against [QHG Forrest, QHG Hattiesburg, Wesley Health,] and the only connection she makes to assert liability against [these defendants] was asserting that [each of these defendants] is a 'parent of, subsidiary of, or entity affiliated with Employer.'" Defs.' Mems. [21], [27] at 11; Defs.' Mem. [29] at 10. CHSPSC, Wesley Physician, QHG Forrest, QHG Hattiesburg, and Wesley Health further argue, "On these facts Plaintiff cannot seriously allege that [they] would have been put on notice of impending suit when Plaintiff filed her charge against 'Merit Health Wesley Hospital (CHS Corporation).'" Defs.' Mems. [21], [29] at 10–11; Defs.' Mems. [19], [25], [27] at 11.

Plaintiff counters that she did not attach a copy of her original EEOC charge to her Complaint, and the Court is not allowed to consider matters outside the

pleadings. She therefore argues that the Court must assume that the following allegation in her Amended Complaint is true:

> [Plaintiff] exhausted her administrative remedies, as required by 42 U.S.C. § 2000e et seq., in that she made a timely filing of her Charges of Discrimination with the Equal Employment Opportunity Commission, and subsequent thereto, [Plaintiff] received a Notice of Right to Sue from the United States [EEOC], and this Complaint is timely filed with this Court within ninety (90) days of her receipt thereof.

Am. Compl. [7] at 5. Furthermore, she asserts that the facts in her Amended Complaint indicate that it is plausible that all of the Merit Health Movants "had actual notice of and involvement in [Plaintiff's] underlying claims, as well as [Plaintiff's] EEOC charge, sufficient to allow [them] to engage in conciliation proceedings had [they] so desired." Pl.'s Mem. [53] at 19.

A court generally must convert a Rule 12(b)(6) motion to dismiss to a motion for summary judgment if it considers matters outside the plaintiff's complaint. Fed. R. Civ. P. 12(d). However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). The Fifth Circuit has previously found that a plaintiff's EEOC charge was central to her claim, so "her failure to include [it] [did] not allow her complaint to bypass [the defendant's] motion to dismiss unexamined." *Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013).

Here, the Merit Health Movants, who have the burden of proving their failure to exhaust defense, did not attach a copy of Plaintiff's charge to their Motions to Dismiss; they merely provided an alleged quote from the charge. The

Court has not located elsewhere in the record, nor has it been provided with a copy of the charge. Therefore, the Court must assume that viewed in the light most favorable to the Plaintiff, she timely exhausted her administrative remedies as alleged. Furthermore, Plaintiff's allegation that the Merit Health Movants have overlapping management, including some of the same officers, provides sufficient basis for finding it plausible that all of the Merit Health Movants had actual notice of Plaintiff's EEOC charge. The Merit Health Movants are not entitled to dismissal on the basis of failure to exhaust.

### B. EMPLOYER STATUS

"As Title VII prohibits discrimination in the employment context, . . . generally only employers may be liable under Title VII." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, "[t]he term 'employer' as used in Title VII of the Civil Rights Act was meant to be liberally construed." *Trevino v. Celanese Corp.*, 701 F.2d 397, 403 (5th Cir. 1983).

The Merit Health Movants claim that Plaintiff failed to plausibly allege that they are her employers as required under Title VII. Plaintiff counters that the Merit Health Movants are Title VII employers pursuant to the single integrated enterprise and joint employer doctrines. The Sixth Circuit has explained the distinction between these two doctrines:

> While the single employer analysis involves examining various factors to determine if two nominally independent entities are so interrelated that they actually constitute a single integrated enterprise, the joint employer . . . concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment.

*Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997). For the reasons that follow, the Court finds that Plaintiff has alleged sufficient facts to support a plausible claim that the Merit Health Movants were her Title VII employers under both doctrines.

### 1. Single Integrated Enterprise

"[S]uperficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer." *Trevino*, 701 F.2d at 404. Courts consider the following four factors when determining whether distinct entities constitute an integrated enterprise: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.* The first factor

> ultimately focuses on whether one entity excessively influenced or interfered with the business operations of the other. Evidence that one entity is involved in the daily employment decisions of the other is central. . . . Evidence suggestive of interrelated operations includes (1) one entity's involvement in the other's daily decisions relating to production, distribution, marketing, and advertising; (2) shared employees, services, records, and equipment; (3) commingled bank accounts, accounts receivable, inventories, and credit lines; (4) one entity's maintenance of the other's books; (5) one entity's issuance of the other's paychecks; and (6) one entity's preparation and filing of the other's tax returns.

*Perry v. VHS S.A. Partners, L.L.C.*, 990 F.3d 918, 927 (5th Cir. 2021) (citation modified). Courts generally view the second factor as the most important, and the Fifth Circuit has "refined the inquiry into one question: What entity made the final decisions on employment matters regarding the person claiming discrimination?" *Id.*

In the Complaint, Plaintiff alleges the following facts:

- CHS, the parent company, is a Delaware corporation. Am. Compl. [7] at 2, 12.

- CHSPSC, Wesley Health, Wesley Physician, and HBMS are Delaware limited liability companies. *Id.* at 2–3.

- QHG Forrest and QHG Hattiesburg are Mississippi Corporations. *Id.* at 4.

- The principal place of business for all of the Merit Health Wesley Defendants is 4000 Meridian Boulevard, Franklin, Tennessee 37067. *Id.* at 2–4.

- Plaintiff signed an Advanced Practice Clinician Employment Agreement with Wesley Physician on January 23, 2025. *Id.* at 6.

- "In April 2025, a recruiter for CHS and/or CHSPSC informed [Plaintiff] that she needed to sign a new employment agreement as the hospitalist group employed by Merit Health was transitioning to another CHS and/or CHSPSC entity." *Id.* at 6–7.

- "In early May 2025, the same recruiter for CHS and/or CHSPSC offered [Plaintiff] a PRN contract arrangement that would allow her to easily move to a day shift when one became available without being rehired or re-credentialed at Merit Health." *Id.* at 7.

- "These entities share common and overlapping management, officers, directors, and decisionmakers (including but not limited to Justin Pitt and Kevin Hammons); share a common state of incorporation and/or principal office address; permit free flow of capital among them; maintain common control over labor relations including hiring, training, firing, supervision, and disciplinary decisions; present themselves as a single hospital system 'Merit Health Wesley'; act in concert to manage employees; and other acts to be shown at trial." *Id.* at 11.

- "On information and belief, the policies governing Merit Health Wesley's operation, including employment policies, were formulated by the parent company, CHS, or one of CHS's other subsidiary or affiliate companies, further demonstrating centralized control of labor relations." *Id.* at 12.

- On May 22, 2025, Plaintiff signed a new Advanced Practice Clinician

Employment Agreement with Merit Health, and HBMS was listed as the named employer. *Id.* at 8.

- Plaintiff's pay stubs identified QHG Hattiesburg as her "Legal Employer." *Id.* at 11.
- "[Plaintiff's] employment agreements with Wesley Physician and HBMS are only valid if reviewed and agreed upon by a representative of CHSPSC which is identified as the 'Employer's Management Company.'" *Id.* at 11.

Plaintiff claims that her employment agreement with Wesley Physician was replaced by an employment agreement with HMBS before the alleged assaults and constructive discharge occurred. Yet, she claims that a representative of "CHS and/or CHSPSC" negotiated this contract change. In addition, she claims that her employment agreements were only valid if approved by CHSPSC. Yet another entity, QHG Hattiesburg, was listed as her employer on her paystub. Finally, she alleges that all of the Merit Health Movants "permit free flow of capital among them; maintain common control over labor relations including hiring, training, firing, supervision, and disciplinary decisions; present themselves as a single hospital system 'Merit Health Wesley'; [and] act in concert to manage employees." *Id.* at 11. While Plaintiff's Amended Complaint does not address the most important factor—What entity made the final decisions regarding her employment?—she has asserted several facts indicating that the Merit Health Movants may be so closely linked that it would be difficult for Plaintiff to determine which entity or entities denied her request for transfer to the day shift after the alleged assaults. *See Perry*, 990 F.3d at 927.

As noted above, the Court does at this stage weigh evidence. Plaintiff's allegations may not ultimately be sufficient to demonstrate the existence of a single integrated enterprise on the merits, but they are sufficient to assert a plausible claim that the Merit Health Movants were sufficiently involved with the operations of HBMS, as well as Plaintiff's employment. *See Merriott v. City of Bossier City*, 179 F.4th 393, 402 (5th Cir. 2026) (While considering a Rule 12(b)(6) Motion, the court must "take all factual allegations as true and construe the facts in the light most favorable to the plaintiff."); *see also in re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citation modified) ("This [Rule 12(b)(6)] standard simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements."). Thus, the Court finds that Plaintiff states a plausible Title VII claim against the Merit Health Movants pursuant to the single integrated enterprise doctrine.

**2. Joint Employer**

"The term 'joint employer' refers to two or more employers that are unrelated or that are not sufficiently related to qualify as an integrated enterprise, but that each exercise sufficient control of an individual to qualify as [her] employer." *Perry*, 990 F.3d at 928. The Fifth Circuit applies the "hybrid economic realities/common law control" test to determine "whether an entity exercises enough control over an individual to qualify as [her] employer[.]" *Id.* at 929.

> The right to control the employee's conduct is the most important component of determining a joint employer. When examining the control component, we focus on the right to hire and fire, the right to supervise, and the right to set the employee's work schedule. The

> economic-realities component of the "hybrid economic realities/common law control test" focuses on who paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment.

*Id.* This test is "necessarily a fact-specific inquiry and is therefore typically applied in a summary judgment context[.]" *Muhammad v. Dall. Cnty. Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 382 (5th Cir. 2007).

Plaintiff has alleged that her initial contract was with Wesley Physician, but a representative of "CHS and/or CHSPSC" arranged for her to sign a new contract with HBMS. During that process, that representative made representations about her ability to eventually transfer to the day shift. Meanwhile, QHG Hattiesburg was listed as her employer on her paystub. She also alleged that all of these defendants "maintain common control over labor relations." Am. Compl. [7] at 11. As a result, Plaintiff has stated a plausible claim that these entities served as her joint employer under Title VII.

**III. CLAIMS GROUNDED IN NEGLIGENCE AND GROSS NEGLIGENCE**

Although the Merit Health Movants dispute that they were Plaintiff's employers, they argue in the alternative that Plaintiff's negligent hiring, negligent training, negligent retention, negligent supervision, and negligent infliction of emotional distress claims are barred by the exclusivity provision of the MWCA, which states:

> [T]he liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages at common law or otherwise from such employer on account of such injury or death[.]

Miss. Code Ann. § 71-3-9(1). The Mississippi Supreme Court has held that this provision bars negligence claims arising out of an employer-employee relationship. *Spiers v. Oak Grove Credit LLC*, 328 So. 3d 645, 652–53 (Miss. 2021); *Bowden v. Young*, 120 So. 3d 971, 973–74 (Miss. 2013).

> [F]or a tort claim against an employer to fall outside the MWCA and survive Rule 12(b)(6) dismissal, a plaintiff must allege that the actions of the employer went beyond negligence, gross negligence, or recklessness. In order to succeed on such a claim, the plaintiff must allege and prove that the employer acted with an actual intent to injure the employee, with full knowledge that the employee would be injured and with the purpose of the action being to cause injury to the employee.

*Bowden*, 120 So. 3d at 976. "Essentially, if the facts alleged or proven point to negligence, gross negligence, or recklessness, despite an allegation of actual intent, [the court] will find that workers' compensation is the sole avenue for relief for the aggrieved party." *Id.* at 977. "It is not enough . . . that the employer's conduct leading to the injury consists of . . . knowingly permitting hazardous conditions to exist or willfully failing to furnish a safe place to work or knowingly ordering the employee to perform a dangerous job." *Griffin v. Futorian Corp.*, 533 So. 2d 461, 464 (Miss. 1988) (citation modified). As a result, "few cases have escaped the Act's powerful grasp of exclusivity." *Spiers*, 328 So. 3d at 653.

Plaintiff argues that the exclusivity provision does not apply to her claims because she has plausibly alleged "she was intentionally injured by Aguirre, who was her Supervisor, and who was hired by, and under the supervision of," the Merit Health Movants. Pl.'s Mem. [53] at 30. Plaintiff's arguments are foreclosed by

binding Mississippi caselaw. *See Schaffner Mfg. Co., Inc. v. Powell*, 331 So. 3d 11 (Miss. 2022). In *Schaffner*, the plaintiff alleged that two of his co-workers severely injured him during an assault and battery "while in the course and scope of their employment." *Id.* at 13. The Mississippi Supreme Court held that the plaintiff's claims against his employer for general negligence, negligent hiring, retention, and supervision were "all claims of direct negligence against Schaffner." *Id.* at 14. Therefore, the MWCA was the plaintiff's exclusive remedy for those claims against his employer. *Id.* Pursuant to this Mississippi law, Plaintiff's negligent hiring, negligent training, negligent retention, negligent supervision, and negligent infliction of emotional distress claims against the Merit Health Movants must be dismissed pursuant to the MWCA.

## IV. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS AGAINST THE MERIT HEALTH MOVANTS

Plaintiff attempts to assert intentional infliction of emotional distress claims against the Merit Health Movants in Counts VII and VIII of her Amended Complaint. In support of Count VII, she alleges:

> Merit Health entities, and each of them, caused [Plaintiff] emotional distress, which was reasonably foreseeable, by: creating and harboring a work environment that allowed pervasive sexual harassment, assault, and battery; allowing Dr. Aguirre to sexually harass, assault, and rape [Plaintiff]; repeatedly promising day shift reassignment before [Plaintiff] reported the assaults, then refusing reasonable accommodations afterward; failing to offer counseling, support, or resources; insisting [Plaintiff] return to night shift despite her reasonable fears; characterizing Dr. Aguirre's violent assaults as consensual; and other acts to be shown at trial.

Am. Compl. [7] at 19. In support of Count VIII, she asserts:

> 90. Dr. Aguirre's non-consensual physical contacts and Merit Health's constructive discharge of [Plaintiff] are of such nature to invoke outrage or revulsion in a civilized society, were directed to and intended to cause harm to [Plaintiff], and caused [Plaintiff] severe emotional distress, all of which were foreseeable.
> 91. Merit Health knew or should have known of Dr. Aguirre's propensity to sexually harass his female subordinates but allowed his conduct to continue.

*Id.* at 20.

The Merit Health Movants provide very little argument or authority supporting their request for dismissal of Plaintiff's intentional infliction of emotional distress claims. They merely claim that (1) she did not provide specific facts concerning each Movant, and (2) she failed to establish that the Movants had "single-employer status." Defs.' Mem. [19] at 16. As explained previously, Plaintiff's Amended Complaint is not a shotgun pleading because she provided sufficient basis for grouping the defendants as one entity to satisfy the Rule 12(b)(6) standard. She claimed that these Movants were alter-egos who jointly employed Plaintiff and Dr. Aguirre. In addition, the Court finds that her allegations that the Merit Health Movants classified sexual assaults as consensual acts and that they either knew or should have known about Dr. Aguirre's propensity to sexually harass female subordinates constitute a plausible claim for intentional infliction of emotional distress.

## V. ALTER EGO/CO-PRINCIPALS, RESPONDEAT SUPERIOR, ATTORNEY'S FEES AND COSTS

Plaintiff attempts to assert causes of action that she calls "alter ego/co-principals," "respondeat superior," and "attorney's fees and costs." She discusses

the joint employer and single integrated enterprise doctrines in support of her purported claim for "alter ego/co-principals." The Court addressed those doctrines while discussing Plaintiff's Title VII claim, supra. Furthermore, as this Court and others have previously clarified, "alter ego" is not a substantive cause of action under Mississippi law. *See Starr Indem. & Liab. Co. v. Premier Craneworks, LLC*, No. 1:22-CV-64-HSO-BWR, 2022 WL 19240788, at *3 (S.D. Miss. Nov. 1, 2022); *see also Barabe v. Apax Partners Eur. Managers, Ltd.*, 359 F. App'x 82, 84 (11th Cir. 2009) (explaining that "disregard of corporate entity and "joint venture" are not independent causes of action); *Kodaco Co. v. Valley Tool, Inc.*, No. 3:23-CV-211-GHD-JMV, 2024 WL 386951, at *2 n.1 (N.D. Miss. Jan. 31, 2024) (citation modified) ("'Alter ego' is not a substantive claim but merely a procedural argument that, if successful, allows a plaintiff to pierce the corporate veil and recover from a corporation's shareholders or an LLC's members.").

In support of her alleged respondeat superior claim, Plaintiff states:

> At all material times, Dr. Aguirre was an employee of Merit Health acting within the course and scope of his employment. As such, the knowledge, acts, and omissions of Dr. Aguirre are imputed to Merit Health, and Merit Health is liable for his acts and omissions pursuant to the doctrine of respondeat superior.

Am. Compl. [7] at 12. "The doctrine of respondeat superior holds an employer liable for the negligent acts of its employee performed in the course and scope of the employment." *Keith v. Peterson*, 922 So. 2d 4, 10 (Miss. Ct. App. 2005). Courts within the Fifth Circuit have noted that respondeat superior is not a separate cause of action but merely a theory of liability. *See Archie v. Hut Memphis LLC*, No. 3:24-

CV-85-DMB-RP, 2025 WL 1180297, at *4 (N.D. Miss. Apr. 23, 2025) (collecting cases); *Brit UW Ltd. v. Atwood Props.*, LLC, No. 1:21-CV-313-HSO-BWR, 2023 WL 9232366, at *5 (S.D. Miss. July 31, 2023). Furthermore, Plaintiff's attempt to assert a respondeat superior claim against Dr. Aguirre is inappropriate because this doctrine does not impose liability on the employee; it only imposes liability on the employer. *See Keith*, 922 So. 2d at 10.

Finally, Plaintiff attempts to assert a cause of action for attorney's fees and costs of litigation pursuant to 42 U.S.C. § 1988. However, the Federal Rules of Civil Procedure provide a party should usually request these remedies in a post-judgment motion, and a party should seek costs by filing a post-judgment bill of costs. *See generally* Fed. R. Civ. P. 54(d). One exception arises when a claim for attorney's fees must be demonstrated as an element of a cause of action. *See* Fed. R. Civ. P. 54(d)(2)(A). Plaintiff concedes that she cannot recover attorney's fees and costs from Dr. Aguirre under 42 U.S.C. § 1988. As for the Merit Health Movants, "§ 1988 does not provide for a separate cause of action, only for recovery of attorney's fees and expert fees to parties prevailing on certain other causes of action." *See Villegas v. Galloway*, 458 F. App'x 334, 338 (5th Cir. 2012). The Court has found no basis for treating Plaintiff's § 1988 request for attorney's fees and costs as an independent cause of action in this case.

In summary, "alter ego," "co-principals," "respondeat superior," and "attorney's fees and costs" are not independent causes of action because a plaintiff cannot file a lawsuit asserting one of these theories of recovery unaccompanied by

other claims. *See Cause of Action*, *Black's Law Dictionary* (12th ed. 2024) (defining "cause of action" as "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person"). In this case, it would be more appropriate for the Court to address the theories of "alter ego," "co-principals," and "respondeat superior," in conjunction with the causes of action against the Merit Health Defendants that these theories of liability allegedly support, either on motions for summary judgment, or at trial. Requests for attorney's fees and costs will be addressed, if appropriate, at the time specified by Fed. R. Civ. P. 54(d). To the extent that Plaintiff attempts to bring independent causes of action for "alter ego," "co-principals," "respondeat superior," and/or "attorney's fees and costs" those purported causes of action are dismissed with prejudice as to the Merit Health Movants. In addition, the purported "respondeat superior" and "attorney's fees and costs" claims against Dr. Aguirre are dismissed with prejudice.

**CONCLUSION**

The exclusivity provision of the MWCA bars Plaintiff's claims for negligent hiring, negligent training, negligent retention, negligent supervision, and negligent infliction of emotional distress against the Merit Health Movants. While Plaintiff can assert the legal theories of "alter ego," "co-principals," and "respondeat superior," these doctrines do not constitute independent causes of action. Similarly, Plaintiff may request attorney's fees and costs under the appropriate circumstances and at the appropriate time, but she cannot assert a separate cause of action for

attorney's fees and costs. As a result, Plaintiff's causes of action for "alter ego/co-principals," "respondeat superior," and "attorney's fees and costs" against the Merit Health Movants are dismissed with prejudice. For those same reasons, her claims for "respondeat superior" and "attorney's fees and costs" against Dr. Aguirre are dismissed with prejudice.

Finally, for the reasons stated previously, Plaintiff has stated plausible Title VII and intentional infliction of emotional distress claims against the Merit Health Movants. To the extent the parties raise alternative arguments, the Court has considered them and determined they would not alter the result.

**IT IS THEREFORE ORDERED AND ADJUDGED** that CHSPSC's [18] Motion to Dismiss, the [20] QHG Forrest's Motion to Dismiss, CHS's [22] Motion to Dismiss, Wesley Physician's [24] Motion to Dismiss, QHG Hattiesburg's [26] Motion to Dismiss, and Wesley Health's [28] Motion to Dismiss are **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED AND ADJUDGED** that Dr. Aguirre's [43] Motion to Dismiss Counts II and IX of the Amended Complaint is **GRANTED**.

**SO ORDERED AND ADJUDGED** this the 5th day of September, 2026.

s/ Louis Guirola, Jr.

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE